IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KIM WICKENHEISSER and RONALD WICKENHEISSER, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>Case No. 2:14-cv-635-DB<br><br>Judge Dee Benson |

Before the Court is Defendant's Motion for Summary Judgment. [Dkt. 23]. The motion has been fully briefed and a hearing was held before the Court on June 5, 2017. Plaintiffs were represented at the hearing by Charles Conrad and the United States was represented by John Mangum. Based on the parties' written and oral arguments, as well as the relevant facts and the law, the Court enters the following Order.

**BACKGROUND**

While camping in Zion National Park on October 9, 2011, 56 year-old Kim Wickenheisser tripped over an uncovered irrigation ditch and fell as she was walking on a dirt

path toward a restroom at 11:00 p.m.[1] She was walking from campsite #33 in loop B of the Watchman Campground, where the Wickenheissers had twice camped before this incident. For decades, the campsite has had numerous irrigation ditches dug into the soil to provide water for the trees.

The path Mrs. Wickenheisser was on when she fell was one of three short user-created social trails, not a trail built or maintained by the Park Service. She could see light coming from the restroom that was shining down the path in front of her. She was wearing a headlamp turned to its brightest setting. While she was generally aware of the irrigation ditches in the campground, she did not realize what the ditch was as she approached it. The ditch was about 8-14 inches deep and approximately one foot wide. Plaintiff stepped into the ditch and fell, sustaining injuries to the tendons in her left leg, later requiring surgery.

Mrs. Wickenheisser's fall was the only one the Park Service is aware of in that area. Before the incident, the Park began planning to replace this particular aging restroom with a new one that would have cement walkways leading to it from the campground roads on both sides. The renovation included replacing and eliminating the social paths that approached the restroom from the rear. The plan also included reconstructing the irrigation ditches in underground pipes or culverts. The renovation was completed in December of 2012.

The Wickenheissers filed this action against the United States alleging three causes of action: two claims of negligence and one claim of loss of consortium by Ronald Wickenheisser.

---

[1]Zion National Park in southwestern Utah encompasses 148,000 acres. It is administered by the national Park Service and receives over three million visitors each year.

[Dkt. 4].

The United States moves for summary judgment on the basis that Plaintiffs' claims are barred by the discretionary function exception to the Federal Tort Claims Act waiver of sovereign immunity. Plaintiffs argue that the discretionary function exception does not apply to the facts of this case.

**ANALYSIS**

It is well settled that the United States, as a sovereign entity, "is immune from suit save as it consents to be sued . . .and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). Suit against the United States can only be entertained when Congress has specifically waived the United States' immunity. *Id*. Such waivers of sovereign immunity cannot be implied; they must be unequivocally expressed. *See Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002).

The Federal Tort Claims Act (FTCA) is a limited waiver of the United States' sovereign immunity. The FTCA's waiver of immunity is limited to causes of action against the United States arising out of certain torts committed by federal employees acting within the scope of their employment. *See United States v. Orleans*, 425 U.S. 807, 813 (1976). The FTCA waiver is subject to a number of exceptions. *Id*. at 813. These exceptions are to be "strictly observed and exceptions thereto are not to be implied." *Lehman*, 453 U.S. at 160 (*quoting Soriano v. United States*, 352 U.S. 270, 276 (1957)).

One of the exceptions to the jurisdiction granted by the FTCA is the discretionary function exception. 28 U.S.C.§ 2680(a). *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 809 (1984). The burden is on plaintiffs to prove that their claims are not based upon actions immunized from liability under the discretionary function exception. *See Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002).

The discretionary function exception precludes the imposition of liability against the United States for conduct "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception applies regardless of whether the government agent was negligent in his duties, so long as his duties were discretionary. *See Dalehite v. United States*, 346 U.S. 15, 32 (1953); *Lopez v. United States*, 376 F.3d 1055, 1057 (10th Cir. 2004).

The discretionary function exception is a threshold jurisdictional issue. *Elder*, 312 F.3d at 1176. Because the waiver of sovereign immunity is jurisdictional, the court lacks subject matter jurisdiction over a claim that falls within the discretionary function exception. *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998)

Courts employ a two-pronged test to determine the applicability of the discretionary function exception. *See United Sattes v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988); *Elder*, 312 F.3d at 1176. First, a court must determine whether the challenged conduct involved a matter of judgment or choice. *See Berkovitz*, 486 U.S. at 536. Second, if the challenged conduct involved an element of judgment

or choice, a court must next "determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. Both of these prongs are discussed and applied to the facts of this case below.

### A. First Prong

To prevail on the first prong, Plaintiffs must demonstrate that any challenged decisions, actions, or non-actions, involved "no 'element of judgment or choice.'" *Elder*, 312 F.3d at 1176-77 (*quoting Kiehn v. United States*, 984 F.2d 110, 1102 (10th Cir. 1993)). The discretionary function exception does not apply if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" and "the employee has no rightful option but to adhere to the directive." *Gaubert*, 499 U.S. at 322. Plaintiffs must show that Park Service "employees violated a federal statue, regulation, or policy that is both 'specific and mandatory'" to the extent that the government officials are left without any meaningful realm of choice or judgment. *Elder*, 312 F.3d at 1177 (*quoting Arago*, 146 F.3d at 823)).

Plaintiffs have not pointed to any statute, regulation or agency policy regarding the manner in which the Park Service should identify, warn of, design or maintain irrigation ditches such as that involved in this incident. The Government contends that no such mandatory federal directives exist and the treatment of these ditches involved discretion and judgment on the part of the Park officials.

Plaintiffs argue that national parks are required to conduct a "safety audit process" as prescribed in Director Order #50C at § 4.3 and that that requirement satisfies the first prong of *Berkovitz*. The safety audit process is designed for the protection and safety of park visitors. It

outlines a risk assessment tool that parks may use in conducting their audits. However, use of the tool is suggested, not required. Zion National Park complies with Director Order #50C by conducting safety audits whereby it collects and evaluates park injury data to determine what, if anything, can be done to address and prevent accidental injuries in the future. It does not, however, use the suggested risk assessment tool. Directive Order #50C does not eliminate discretion as to how, when, or how often such risk assessments are to be done. Additionally, it expressly states that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities or entities, its officers or employees, or any other person." *Id*. at § 2.2. For these reasons, and because the safety audit does not provide direction or instruction on how to construct, warn or design irrigation ditches, the Government contends that it does not apply to satisfy the first prong of *Berkovitz*. The Court agrees.

In addition to the absence of any federal directive governing treatment of the irrigation ditches, the Government points to the fact that decisions about whether to install lighting, post warning signs, construct barriers, and other safety measures are generally left to the discretion of Park superintendents. *See* National Park Service Management Policies 2006 §§ 8.2.5.1; 9.2.3; 9.3.1.1; 4.10; 9.3.2.1. *See also, Elder*, 312 F.3d at 1180 (finding failure to warn of specific danger at Zion discretionary including determination of whether hazard existed, its severity, and "whether physical barriers or signs are appropriate safety measures"); *Kiehn v. United States*, 984 F.2d 1100, 1103 (10th Cir. 1993) (finding that, in absence of policy or statutory directive requiring the National Park Service to place signs warning of dangers of scaling sandstone cliffs,

conduct pertaining to lack of signs was discretionary under the first prong of *Berkovitz*); *Fothergill v. United States*, 566 F.3d 248 (1st Cir. 2009)(design of post office entrance that lacked curbs or other barriers preventing vehicles from crashing into building discretionary); *Sharp v. United States*, 401 F.2d 440, 442 (6th Cir. 2005)(decision to allow 24 hour public access in Huron National Forest but not install lighting was discretionary); *Mitchell v. United States*, 225 F.3d 361, 362 (3d Cir. 2000)(finding that Park Service's decision not to repair or improve drainage ditch and concrete head-wall located five feet west of paved roadway was discretionary); *Shansky v. United States*, 164 F.3d 688 (1st Cir. 1999)(decision to not install handrail at Hubbell Trading post was discretionary); *Chantal v. United Sates*, 104 F.2d 207 (8th Cir. 1997)(decision not to install ramp or railing along walkway at Jefferson National Historic Site was discretionary); *Rich v. United States*, 119 F.3d 447 (6th Cir. 1997) *cert. denied*. 523 U.S. 1047 (1998)(decision to replace guardrail on downhill curve of national park road with same type guardrail earlier found to be less than fully effective discretionary); *Rosebush v. United States*, 119 F.3d 438 (6th Cir. 1997)(design of fire pit at national forest campsite discretionary); *Kennewick v. United States*, 880 F.2d 1018 (9th Cir. 1989)(decisions involved in design of irrigation project discretionary); *Miller v. United States*, 642 F.Supp.2d 437, 444 (M.D.Pa. 2009)("superintendent's decision not to install warning signs or grated cross path near Arm of the Potomac Artillery Reserve monument was discretionary."); *Waite v. United States*, No. 1:05-cv-720 U.S. Dist. Lexis 35112 *1 (N.D.N.Y. May 14, 2001)(no policy requiring parking lot at Saratoga National historic Park to be lit and failure to do so was discretionary); *Brotman v. United States*, 111 F.Supp.2d 418, 422 (S.D.N.Y. 2000)(Management Policies and Guidelines gave no direction regarding lighting

stairway in Statue of Liberty and declination to do so was discretionary); *Gabriel v. United States*, No. 3:06-cv-917-J-32HTS, 2009 WL 22289 at *1 (M.D.Fla.Jan. 2, 2009) (unpublished) (failure to provide guardrail, lighting or warning was discretionary at Castillo de San Marcos National Monument).

In the absence of a mandated course of action for Park Service employees to follow, the Court finds that the treatment of these irrigation ditches is discretionary under the first prong of the *Berkovitz* test.

### B. Second Prong

The discretionary function exception "protects only governmental actions and decisions based on considerations of policy." *Berkovitz*, 486 U.S. at 536. In order to prevail on the second prong of the *Berkovitz* test, and avoid dismissal, plaintiffs "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-25. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325.

As discussed above, government policy generally permits the Park Service to exercise discretion in determining whether and how to warn of potential dangers. *See* National Park Service Management Policies 2006 §§ 8.2.5.1; 9.2.3; 9.3.1.1; 4.10; 9.3.2.1. Courts have found that such decisions involve social, economic and political policy issues, including balancing the competing natural preservation purposes of park recreation with providing access to park visitors,

aesthetic considerations, the notice and need for various types of warnings, their effectiveness, and practical concerns such as staffing and funding. "Decisions whether and how to make federal lands safe for visitors require making policy judgments." *Rosebush*, 119 F.3d at 443 (holding that discretionary function exception applied to failure to place protecting grating and guard rails around fire pit, "the decision of whether to warn of potential danger is a protected discretionary function" which "involves balancing needs of campground users, effectiveness of various types of warnings, aesthetic concerns, financial consideration, impact on environment, etc.; *Snider v. United States, ex rel., U.S. Army Corps of Engineers*, 2013 WL 3923599 (July 29, 2013) (unpublished) (decision as to whether to give warnings was both discretionary under *Berkovitz*'s first prong and policy driven under *Berkovitz*'s second prong).); *Elder*, 312 F.3d at 1181-84 (decision not to provide additional warnings required Park Service was policy decision, balancing safety, access, cost, preservation of natural resources and aesthetic values, and the likely benefit of additional signage); *Kiehn*, 984 F.2d at 1105 ("decision to not post warning signs in remote areas of national monument inherently requires a balancing of public policy objectives, such as resource allocation, visitor safety and scenic preservation."); *Valdez v. United States*, 56 F.3d 1177, 1180 (9th Cir. 1995)(Park Service decision not to warn of every danger presented by waterfall required balance of policy objectives, including limited resources, public access, public safety, concern about over-proliferation of signs, and obviousness of risk); *Bowman v. United States*, 820 F.2d 1393, 1395 (4th Cir. 1987)(Park Service's decision not to erect warning signs on parkway required balancing many factors, including safety, aesthetics, environmental impact, available financial resources and the obviousness of the risk); *Chantal*,

104 F.3d at 212 (design of steps at national historic site was susceptible to policy analysis and protected by the discretionary function exception); *Wills v. United States*, 111 F.Supp.3d 1277 (M.D. Fla. 2015)(lack of lighting even after prior accident at monument, was grounded in considerations of policy given competing priorities of maintaining historic integrity of grounds, managing limited financial resources, providing for visitor safety); *Lingua v. United States*, 801 F.Supp.2d 320, 328 (M.D.Pa. 2011)(discretionary exception applicable where policy choices exist "in balancing the need to maintain the natural integrity of the grounds, minimize the number of non-authentic features, manage limited financial resources and provide for visitor safety."); *McMullen v. United States*, 950 F.Supp. 1068 (D.Kan. 1996)(finding the Army's decision whether to fence an area containing explosives subject to discretionary function exception).

In *Miller v. United States*, 642 F.Supp.2d 437, 444 (M.D.Pa., 2009), the plaintiff brought suit after she suffered an injury when she fell into a drainage ditch at Gettysburg National Military Park. She argued that the Park Service should have placed signs warning of the danger presented by uncovered drainage ditches. The court dismissed the action stating that the Park's decision to not provide warning signs or coverings on drainage ditches was "discretionary and is the type of decision grounded in relevant social and economic policy considerations, which brings it within the discretionary function exception of the FTCA."

Whether the discretionary function exception applies does not depend on whether the federal employee actually engaged in policy considerations. *See Kiehn*, 984 F.2d 1100 ("[T]he lack of record evidence describing an analysis of public policy factors in the Park Service

decision not to post warnings is immaterial."); *Johnson v. United States*, 949 F.2d 332, 339 (10th Cir. 1991)("the discretionary function exception may apply in the absence of a conscious decision so long as the Park Service's search and rescue program allowed room for the rangers to make independent policy judgments.").

The Court finds that decisions regarding the construction, maintenance and warning of the irrigation ditch in this case, necessitate the balancing of public policy objectives. Accordingly, the second prong of the *Berkovitz* test is not satisfied here.

## CONCLUSION

The Court finds that the bar of the discretionary function exception to the Federal Tort Claims Act applies to the facts of this case and therefore, the Court lacks subject matter jurisdiction over Plaintiffs' claims. The Court hereby GRANTS the United States' Motion for Summary Judgment and this action is dismissed with prejudice in its entirety.

IT IS SO ORDERED.

DATED this 19th day of June, 2017.

_____
Dee Benson
United States District Judge